# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| DAVID E. REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:18-cv-02503-JPM-cgc |
| v. | ) | |
| | ) | |
| FEDEX CORPORATE SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER GRANTING DEFENDANT FEDEX CORPORATE SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT

This reverse employment discrimination case involves an employee who was suspended for filing a false police report in which he claimed to be the victim of racially inspired threats and assault. Plaintiff subsequently suffered a stroke and requested an accommodation under the ADA in the form of reassignment to a different manager. The case is before the Court on Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

Specifically, the Plaintiff, David Reed, claims that Defendant FedEx Corporate Services, Inc. (hereinafter "FedEx Services") violated his civil rights under 18 U.S.C. § 1981 and his rights under the Americans with Disabilities Act ("ADA") in connection with his suspension without pay from November 4, 2016 to January 4, 2016, and by giving him a poor job performance review for the Fiscal Year 2017, and in denying his request for a disability accommodation in August of 2017.

For the reasons set out below, Defendant's Motion for Summary Judgment is

**GRANTED.**

I.      **UNDISPUTED FACTS**

The following facts are not disputed for summary judgment purposes.

Plaintiff David Reed is white male[1] and has been an employee of FedEx Services since

2005.  (Second Amended Complaint, ECF No. 31 ¶¶ 6–7.)  At all times relevant to this case,

Reed held the position of Senior Technical Quality Advisor for FedEx Services.  (FedEx

Services Statement of Undisputed Facts ("FedEx SOF"), ECF No. 83-2 at PageID 846; Reed

Undisputed Statement of Facts ("Reed SOF"), ECF No. 88-2 at PageID 1203.)  Andy Pittman, a

white male,[2] became Reed's immediate supervisor beginning on February 1, 2016, replacing

Reed's former manager, Siram Goteti.  (Reed SOF, ECF No. 88-2 at PageID 1204.)   Throughout

Goteti's tenure as manager, Goteti issued performance reviews of Reed's work at the end of each

Fiscal Year.  (Id.)  Goteti rated Plaintiff's Fiscal Year 2015 performance at 2.3 out of 5, a score

that qualified as "generally acceptable performance."  (Id.; ECF No. 83-4 at PageID 1027–36.)

Reed's performance during the Fiscal Year 2016 was also rated 2.3 out of 5, which put him in

the "generally acceptable performance" range.[3]  (ECF No. 88-2 at PageID 1205; ECF No. 83-4

at PageID 1037–48.)

In September of 2016, Plaintiff, with permission of his supervisor Andy Pittman, began

displaying a sign on his cubicle at FedEx Services that read "I stand while the national anthem is

---

[1] The Court borrows the terminology used by Plaintiff to describe himself in his Second Amended Complaint.  (ECF No. 31.)
[2] The Court is borrowing the descriptive term "white" from the parties, who do not dispute the characterization. (See ECF No. 88-2 at PageID 1204.)
[3] Reed's performance for Fiscal Year 2017 was also rated a 2.3 out of 5, but this score put him in the "poor performance" range.  (ECF No. 88-2 at PageID 1206.)

played."  (Id. ¶ 18; FedEx SOF, ECF No. 83-2; Deposition of David Reed ("Reed Dep."), ECF No. 83-3 at PageID 870.)  This sign was taken down shortly after Reed posted it in his cubicle. (Reed Dep., ECF No. at PageID 870.)  Plaintiff replaced the sign shortly thereafter.  (Id.)  A few days after replacing the sign, Plaintiff testified that he found a note written on the sign reading, "Take down please! Very Offensive!" (Reed Dep., ECF No. 83-3 at PageID 869–71; Exhibit 2, ECF No. 83-7 at PageID 1091.)  Reed responded to this message shortly thereafter by writing "Too Bad!" on the sign.  (Dep. Reed, ECF No. 83-3 at PageID 875.)  Plaintiff reported this incident to Pittman, who suggested he report the incident to FedEx Services Human Resources ("HR").  (Id. at PageID 871.)

Reed testified that on his way to work on the morning of October 4, 2016, he was followed by four African American men in a red vehicle.  (Id. at PageID 871; Reed SOF, ECF No. 88-2 at PageID 1207.)  Reed stated that these men followed him down "five or six different avenues" until he reached work, at which time they continued on after he arrived at the gated entrance at work.  (Reed Dep., ECF No. 83-3 at PageID 871.)  Upon arriving at his cubicle at FedEx Services, Plaintiff found a handwritten note left on his desk which read, "I hate all you motherfucking crackers!"  (ECF No. 83-3 at PageID 872; ECF No. 88-6 at PageID 1987.) Plaintiff reported these incidents to both Pittman and to FedEx Services via its security information management system, eSIMS, and FedEx Services' "Alert Line."  (Louis Pagano Dep., ECF No. 83-7 at PageID 1093; ECF No. 88-6 at PageID 1672–73; Reed Dep., ECF No. 83-3 at PageID 872.)  FedEx responded to Reed's complaint by sending FedEx Services security officers Charles Henderson and Ralph Irving to investigate the incident.[4]  (ECF No. 83-7 at

---

[4] Plaintiff disputes whether Louis Pagano, FedEx Security Specialist, directed these officers to the scene, or whether those officers were sent at the behest of Andy Pittman.  (See ECF No. 88-2 at PageID 1207–08.)

PageID 1097.)  Henderson and Irving interviewed Reed.  (ECF No. 83-7 at PageID 1097; Reed

SOF, ECF No. 88-2 at PageID 1208.)  Reed did not see who left the note at his cubicle.  (Reed

Dep., ECF No. 83-3 at PageID 876–77.)

According to Reed, two days later, on October 6, 2016, while on his way in to work, two

African American males, one driver and one passenger, followed him in the same red car.  (Reed

Dep. ECF No. 83-3 at PageID 872–73.)  Plaintiff stated that one of these individuals displayed a

handgun and cardboard sign which read, "BLM."  (Reed Dep., ECF No. 83-3 at PageID 873.)

Plaintiff testified that he pulled off to the side of the road, at which time the two individuals

pelted his car with eggs.[5]  (Dep. Reed, ECF No. 83-3 at PageID 873–74.)  Plaintiff stated he was

struck in the head by an egg.  (Id. at PageID 873.)  Plaintiff left his vehicle and sought assistance

from a resident who lived nearby.  (Id. at PageID 874.)   Shortly thereafter Collierville Police

Department officers were called to the scene.  (Id.)  The police filed an incident report, and

Plaintiff reported the incident to Pittman and Sandra Cobb, Pittman's direct supervisor.  (Reed

Dep., Exh. 16, ECF No. 83-3 at PageID 889.)  Louis Pagano took a statement from Reed

regarding the incident on that same day.  (Id.)  Pagano also interviewed Reed regarding both the

October 4, 2016 and October 6, 2016 incidents.  (Dep. Reed, ECF No 83-3 at PageID 877.)

Plaintiff was unable to identify who wrote the note left at his cubicle.  (Reed SOF, ECF No. 83-3

at PageID 876–77.)  While FedEx Services did not record video footage of his desk, FedEx

Services did issue a "Be on the lookout" or BOLO notice to its senior officers and had security

officers check on Reed throughout the week.  (Dep. Louis Pagano, ECF No. 88-6 at PageID

1715.)

---

However, the Parties' Statements of Undisputed Facts do not dispute that FedEx security officers interviewed
Reed regarding the incident.  (Id.)
[5] Plaintiff disputes minor details provided by Defendant's Statement of Undisputed Facts, specifically as to the
color of the gun and whether Plaintiff pulled over in a "cove."  (See ECF No. 88-2 at PageID 1208–09.)

On October 13, 2016, the Collierville Police Department filed a criminal complaint against Reed for filing a false police report. (Reed SOF, ECF No. 88-2 at PageID 1211–12; see also Reed Dep., Exh. 20, ECF No. 83-3 at PageID 901.) The Collierville Police Department issued a warrant for his arrest. (ECF No. 83-3 at PageID 901.) In response to the Collierville Police Department's filing of the criminal complaint, on October 27, 2016, FedEx Services suspended Reed with pay. (Reed SOF, ECF No. 88-2 at PageID 1211; ECF No. 83-3, Exh. 20, at PageID 893.) He was suspended pending the outcome of FedEx Services' internal investigation as to whether Reed violated the FedEx Services Acceptable Conduct Policy by filing an internal complaint with FedEx Services arising out of the incident. (ECF No. 83-3, Exh. 20, at PageID 893.) Following its internal investigation, FedEx Services suspended Reed without pay from November 4, 2016 until sometime in January 2017.[6] (Reed Dep., ECF No. 83-3, Exh. 21, at Page ID 903.)

Plaintiff's suspension in the Fall of 2016 and Winter of 2016-2017 caused him significant stress and his "doctors continued to be concerned with his levels of stress in conjunction with his heart condition" after he returned to work in June 2017. (Second Amended Complaint, ECF No. 31 at PageID 225; ECF No. 88-2 at PageID 1215; Reed Dep. ECF No. 88-3 at PageID 1462.) On February 16, 2017, Plaintiff suffered a stroke. (ECF No. 88-7 at PageID 2277; ECF No. 83-6 at PageID 1079.) Reed took a medical leave-of-absence from February 16, 2017, to February 24, 2017 to recover from the stroke. (Id.) He also was on medical leave from March 9, 2017 until his return to work on June 1, 2017. (Id.)

---

[6] The parties do not agree on the exact date when Reed returned to work. (See ECF No. 88-2 at PageID 1212.) The parties, however, do not dispute that Reed was, in fact, suspended without pay beginning on November 4, 2016 until his later reinstatement sometime in January 2017. (Id.)

On or about March 17, 2017, Plaintiff filed a request for a disability accommodation. (Reed SOF, ECF No. 88-2 at PageID 1215.) Plaintiff requested that FedEx Services reassign him to work for a different manager other than Andy Pittman. (Id.) Plaintiff filed associated ADA documentation on or about March 27, 2017 in support of his accommodation. (Id. at PageID 1216.) This included a letter from Dr. Steve Overby, his treating physician. (Id.) Following the submission of the request, the FedEx Services Leave Management Team, led by Breanna Milner, requested more information and paperwork from Plaintiff regarding his requested accommodation.[7] (Id.; see Dec. Brianna Milner, ECF No. 83-9 at PageID 1109, 1111.) The FedEx committee specifically requested that Reed provide more information on his contention that Pittman had created a hostile work environment. (Dec. Brianna Milner, ECF No. 83-9 at PageID 1111.) On or about April 9, 2017, Reed transmitted additional ADA paperwork to Brianna Milner. (Reed SOF, ECF No. 88-2 at PageID 1218.) Plaintiff alleges that although he provided additional paperwork and was in contact with individuals on the committee throughout the Spring and Summer of 2017 regarding his need for the requested accommodation, FedEx Services "never considered the ADA paperwork [Plaintiff submitted] because they summarily decided that the change of managers would not alleviate stress." (Id. at PageID 1217–20.)

FedEx Services also investigated Plaintiff's hostile work environment complaints against Pittman filed at the same time or shortly after Plaintiff submitted his ADA accommodation request. (Id. at PageID 1220.) Beginning in May 2019, FedEx Services HR opened an internal investigation into these complaints. (Id. at PageID 1220; see ECF No. 88-7 at PageID 2204–08;

---

[7] Plaintiff disputes exactly who reviewed his documentation. Specifically, he disputes whether all committee members reviewed the totality of these submitted documents. (ECF No. 88-2 at PageID 1217.) However, the Parties do not dispute that his request was reviewed by members of FedEx Services' ADA accommodation team. (Id.)

see also Dec. Pearlie Thomas, ECF No. 83-4 at PageID 913, 1058–62.)  FedEx Services concluded its investigation on July 26, 2017, finding that although no corrective action was required, some recommendations should be given to Pittman.  (ECF No. 88-2 at PageID 1220.) During parts of FedEx Services' investigation into Plaintiff's workplace harassment complaint against Pittman and while Reed's accommodation request was still under review, Plaintiff reported to Sandra Cobb instead.  (See id. at PageID 1222; see also Dec. Brianna Milner, ECF No. 83-9 at PageID 1110; ECF No. 88-7 at PageID 2204.)

On August 24, 2017, the committee informed Reed that after reviewing his materials submitted throughout the Spring and Summer of 2017 he would not be assigned to a new manager.  (Dec. Brianna Milner, ECF No. 83-9 at PageID 1110.)  FedEx Services found that the additional paperwork submitted by Reed in support of his accommodation request failed to address how a change of managers would reduce his workplace stress.  (Id. at PageID 1109, 1113.)

Plaintiff concedes that neither members of FedEx Services management team nor HR made race-related comments towards him.  (Reed SOF, ECF No. 88-2 at PageID 1222.) Additionally, Plaintiff testified that his problems with Pittman mainly arose out of Pittman's management style.  (Dep. Reed, ECF No. 83-3 at PageID 863:4–6.)  Reed testified that although he does not believe that Pittman discriminated against him because he was "Caucasian," he does believe that Pittman treated him differently because he filed his ADA accommodation request for a new supervisor and because of his workplace violence complaint.  (Id. at PageID 864–65.)

## II.    PLAINTIFF'S CLAIMS

Plaintiff alleges that FedEx Services unlawfully discriminated and retaliated against him based on his race and disability in violation of § 1981 and the ADA.  (Second Amended

Complaint, ECF No. 31 at PageID 216.)  Specifically, Plaintiff asserts that Defendant violated § 1981 by failing to take action "after Mr. Reed had reported race-based derogatory discrimination" related to the events of the Fall of 2016, and by failing to respond to his complaints of racial harassment.  (Id. ¶ 165.)  Additionally, Plaintiff asserts that Defendant suspended Reed without pay in retaliation for Plaintiff's protected activities, namely his complaints of race-based discrimination and hostile work environment dating back to the Fall of 2016.  (Id. ¶ 166.)  Plaintiff also asserts that the suspension without pay itself was the product of unlawful racial discrimination in violation of § 1981.  (Id.)  Plaintiff further asserts that his poor performance review for Fiscal Year 2017, which prevented him from receiving a discretionary year-end bonus, was in retaliation for his filing of race-based complaints in violation of § 1981. (Id. ¶ 167.)  Plaintiff also asserts that Defendant denied his requested workplace accommodation in violation of the ADA, and that Defendant failed to engage in the interactive process required by the ADA by summarily dismissing his accommodation.  (Id. ¶¶ 169–70.)  Finally, Plaintiff asserts that his poor performance review was in retaliation for his ADA accommodation request for a new supervisor, and for the filing of his racial harassment and workplace violence complaints.  (Id. ¶ 171–72.)

## III.    LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted); see also Kalich v. AT&T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

In order to "show that a fact is, or is not, genuinely disputed," both parties must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), *abrogation recognized by* Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251–52). Summary judgment "'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Services, LLC, No. 1:08 CV 02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247–254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a

motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. See Mitchell, 964 F.2d at 584–85.

## IV.    ANALYSIS

### A.  42 U.S.C. § 1981 Analysis

Section 1981 prohibits racial discrimination in the making of and enforcement of contracts. 42 U.S.C. § 1981. Reverse discrimination claims brought under 42 U.S.C. § 1981 are analyzed under the Title VII McDonnell Douglas/Burdine burden-shifting framework. Newman v. Federal Express Corp., 266 F.3d 401, 406 (6th Cir. 2001). In order to establish a prima facie case of racial discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by or treated differently than similarly-situated individuals from outside that protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The Sixth Circuit has also adopted this four-part test in cases of reverse discrimination, that is, in cases where a member of a majority group brings a racial discrimination claim. See Leadbetter v. Gilley, 385 F.3d 683, 690 (6th Cir. 2004). "In such cases, a plaintiff satisfies the first prong of the prima facie case by demonstrating background circumstances to support the suspicion that the defendant is that unusual employer who discriminated against the majority." Id. (internal quotation marks and citations omitted). "[T]he complainant bears the burden of demonstrating that he was intentionally discriminated against 'despite his majority status.'" Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985).

To satisfy prong four of the prima facie case, the plaintiff must demonstrate that the "defendant treated differently employees who were similarly situated but who were not members of the protected class." Leadbetter, 385 F.3d at 690. Although the plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be similarly situated, . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself must be similar in all of the relevant aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks and citations omitted). These comparators may have, for example, "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances what would distinguish their conduct or the employer's treatment of them for it." O'Donnell v. City of Cleveland, 838 F.3d 718, 727 (6th Cir. 2016). Courts make an "independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." Ercegovich, 154 F.3d at 396; see also Jackson v. FedEx Corp. Servs., Inc., 518 F.3d 388, 396 (6th Cir. 2008) (cautioning against an "exceedingly narrow" formulation of the similarly situated standard and requiring a "true, independent determination of the relevant factors").

In reverse discrimination cases, prongs one and four of the McDonnell-Douglas framework should be viewed separately. "Showing that similarly situated employees of other races were treated differently than the plaintiff is an independent evidentiary requirement . . . . [H]olding that such evidence also satisfies the background circumstances requirement would collapse a four-legged test into a three-legged one." Treadwell v. Am. Airlines, Inc., 447 F. App'x 676, 679 (6th Cir. 2011).

If the plaintiff makes out a prima facie case of reverse racial discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment action. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142–43 (2000). However, at no time does the the burden of persuasion on the question of racial discrimination shift from plaintiff to defendant. Id. If the defendant has proffered a legitimate, nondiscriminatory reason, the burden of production then shifts from the defendant back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. Id. at 143; see also Zambetti v. Cuyahoga Cmty. College, 314 F.3d 249, 258 (6th Cir. 2002). A plaintiff may demonstrate pretext by showing that the defendant's legitimate, non-discriminatory reason "(1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct." Zambetti, 314 F.3d at 258 (citing Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1084 (6th Cir. 1994)). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). However, "to survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." Griffin v. Finkbeiner, 698 F.3d 584, 593 (6th Cir. 2012) (quoting Blair v. Henry Filters, Inc., 505 F.3d 517, 532 (6th Cir. 2007)).

The Court finds that Plaintiff has not met his burden of demonstrating that Defendant FedEx Services unlawfully discriminated against Plaintiff because of his race. Specifically, Plaintiff cannot demonstrate prongs one and four of the prima facie case, and Plaintiff also cannot demonstrate that Defendant FedEx Services' legitimate, nondiscriminatory reason for his suspension without pay was a pretext for discrimination.

Construing the evidence in the light most favorable to Plaintiff, Plaintiff has not demonstrated "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." Ledbetter, 385 F.3d at 690. The background-circumstances element does not require a plaintiff to "prove that the employer's actions actually were illegally motivated." Johnson v. Metro. Gov't of Nashville & Davidson Cty., 502 F. App'x 523, 536 (6th Cir. 2012) (quoting Boger v. Wayne Cty., 950 F.3d 316, 324–25 (6th Cir. 1991)). It only requires the plaintiff to "support the suspicion that the defendant is that unusual employer who discriminates against the majority." Boger, 950 F.2d at 324–25.)

The background circumstances Plaintiff can point to are the racially-derogatory note left at Plaintiff's cubicle as well as the events of October 4, 2016 and October 6, 2016. See supra Undisputed Facts, Sec. I. Plaintiff could not identify who left the racially derogatory note at his cubicle, making it difficult for Plaintiff to demonstrate "evidence of ongoing racial tension in the workplace." Treadwell v. Am. Airlines, Inc., 447 F. App'x 676, 678 (6th Cir. 2012) (citing Boger, 950 F.3d at 324–25). The events surrounding the removal of and defacing of Plaintiff's "I stand while the national anthem" sign also cannot be construed to support a reasonable inference that Plaintiff experienced racial tension in the workplace, given that these comments are more likely politically motivated than racially motivated. (See Reed Dep., ECF No. 83-3 at PageID 870; FedEx SOF, ECF No. 83-3 at PageID 869–71.) Although the "I hate you motherfucking crackers" sign left at his cubicle is racially motivated and may "support the suspicion that the defendant is that unusual employer who discriminates against the majority," Boger, 950 F.2d at 324–25, that single incident does not provide evidence of "ongoing racial tension in the workplace." Treadwell, 447 F. App'x at 678.

Even if, however, Reed has demonstrated Prong 1 of the prima facie case, he has not

demonstrated that FedEx "treated differently employees who were similarly situated but who

were not members of the protected class." Leadbetter, 385 F.3d at 690. Plaintiff has not

provided other non-majority FedEx employees similar who are similarly situated to Plaintiff in

all relevant aspects. FedEx Services provided a list of comparators who were either suspended

without pay or terminated following their indictment, or who had criminal charges filed against

them. (FedEx SOF, ECF No. 88-2 at PageID 851.) Plaintiff disputes that these individuals are

similarly situated. (Reed SOF, ECF No. 88-2 at PageID 1214–15.) Plaintiff contends that these

comparators' "charges were not expunged and were more serious than the Plaintiff's baseless,

expunged charges" and that "Louis Pagano, FedEx Services' security specialist knew the charges

were expunged." (Reed SOF, ECF No. 88-2 at PageID 1228, 1214–15.)

Whether Defendant's proffered comparators are not adequately similar to Plaintiff does

not change the fact that the burden falls on Plaintiff to produce evidence of similarly situated

comparators who were treated differently by FedEx Services. Leadbetter, 385 F.3d at 690.

Plaintiff has not identified other FedEx Services non-majority employees who were not

suspended without pay (or who did not suffer an adverse employment action) after the filing of a

false police report, or after being arrested and charged in connection with alleged criminal

misconduct. See Ercegovich, 154 F.3d at 396 (finding that courts make an "independent

determination as to the relevancy of a particular aspect of the plaintiff's employment status and

that of the non-protected employee").

FedEx Services' proffered comparators also support the conclusion that FedEx Services

applies this policy even-handedly to employees facing pending criminal charges. These

provided comparators include Chris Fiacconne, Edwin Gore, Dallas McLellan, and Ashleigh

Mellon. (See Reed SOF, ECF No. 88-2 at PageID 1214.) According to FedEx Services human resources employee Pearlie Thomas, all four of these individuals were suspended without pay following FedEx Services' discovery of their arrest, indictment, or ongoing criminal charges. (Dec. of Pearlie Thomas, ECF No. 83-4 at PageID 910.) FedEx Services suspended Fiaconne without pay following his failure to provide paperwork to FedEx Services regarding his arrest in connection with allegations of domestic violence. (See id. at PageID 981–88.) FedEx Services terminated Edwin Gore following his guilty plea as to one count of possession with intent to distribute child pornography. (See id. at PageID 989–993.) FedEx Services suspended Dallas McLellan without pay in connection with vandalism charges brought against him. (See id. at PageID 994–1000.) Finally, FedEx Services suspended Ashleigh Mellon without pay after she was charged with reckless driving and driving while impaired, as well as two felony charges for serious injury by vehicle. (See id. at PageID 1001–03.) These individuals are comparable to Reed in all relevant aspects: each was suspended without pay or terminated for violating FedEx Services' acceptable workplace conduct policy after FedEx Services was notified of the criminal charges brought against each of them.

Even if Plaintiff were able to make out a prima facie case of race discrimination, Plaintiff cannot demonstrate that FedEx Services proffered legitimate, non-discriminatory reason was a pretext for racial discrimination. FedEx Services asserts that it suspended Plaintiff without pay because he was charged with filing a false police report in violation of FedEx Services' policies. See supra Sec. I. Plaintiff has not provided evidence supporting the inference this proffered reason "had no basis in fact," that it "did not actually motivate the employer's conduct," or that it was "insufficient to warrant the challenged conduct." White v. Columbus Metro. Housing Auth., 429 F.3d 232, 245 (6th Cir. 2005). Plaintiff does not dispute that the Collierville Police

Department charged him with filing a false police report, nor does he dispute that a warrant for his arrest was issued. (See Reed SOF, ECF No. 88-2 at PageID 1211.) Plaintiff only contends that the circumstantial background evidence of discrimination demonstrates that Defendant's reason for Plaintiff's suspension without pay was pretextual. (See ECF No. 88-1 at PageID 1189–91.) However, the circumstantial evidence pointed to by Plaintiff is insufficient to support a reasonable jury's finding that FedEx Services' reasons lacked a basis in fact, or that this reason was not FedEx Services' actual reason for Plaintiff's suspension without pay. (Id.)

Plaintiff's assertion that the charges were "baseless" and later expunged (see ECF No. 88-2 at PageID 1214–15, 1228) also does not support a finding that Defendant's decision to suspend him without pay was a pretext for racial discrimination. The Court cannot second-guess whether FedEx Services was correct to suspend Plaintiff without pay given the charges against Plaintiff were ultimately dropped. See Donald v. Sybra, Inc., 667 F.3d 757, 763 (6th Cir. 2012) (finding that "it is not in the interests of justice for [the court] to wade into an employer's decisionmaking process"). The Court is only concerned with the "employer's belief, and whether it is informed and nondiscriminatory" at the time it made its decision rather than whether the "employer arrived at its decision in an 'optimal' [manner]." Id.

Moreover, Reed cannot genuinely assert that the charges were "baseless." (Reed SOF, ECF No. 88-2 at PageID 1228, 1214–15.) It is indisputable that the statements Reed made to the Collierville Police Department were inaccurate. Reed admitted in his deposition that his account of the events of October 6, 2016 was inaccurate in key aspects; for instance, he admitted that the events of that day did not occur at the location he provided to the Collierville Police. (See Reed Dep., ECF No. 83-3 at PageID 880–87.) The Collierville Police Department's investigative report indicates that Reed's narrative of the October 6, 2016 incident was "obviously not the

case." (Id. at PageID 901, Exhibit 20.) Video surveillance footage captured the incident and clearly contradicts Reed's recounting of the events of October 6, 2016. (Id.) These serious allegations, and the substantial evidence supporting the Collierville Police Department's charges against Reed, further justify FedEx Services' decision to suspend Reed without pay.

Plaintiff also appears to assert that the fact that Randy Irving, an African-American male, was part of the decision-making process supports an inference of racial discrimination. (Reed SOF, ECF No. 88-2 at PageID 1228.) Although that might constitute "background circumstances" as part of the first prong of Plaintiff's prima facie case, it does not demonstrate pretext. See Zambetti v. Cuyahoga Cmty. College, 314 F.3d 249, 257 (6th Cir. 2002).

Finally, the Court notes that Reed stated in his deposition that he did not believe he was discriminated against because of his race. (Reed Dep. ECF No. 83-3 at PageID 864.) Plaintiff also stated that he believed FedEx Services management and HR had not discriminated against him based on his race, and that he did not think race "[was] a component here." (Id. at PageID 866–67.) These statements further support the conclusion that FedEx Services did not discriminate against Plaintiff based on his race.

In summary, Plaintiff has failed to provide evidence from which a reasonable jury could conclude that his suspension without pay was the product of racial discrimination.

**B. Racial Harassment under 42 U.S.C. § 1981**

In order to prove a prima facie case of hostile work environment under § 1981, a plaintiff must demonstrate that: "(1) he is a member of a protected class[8]; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race . . . ; (4) the harassment created a hostile work environment; and (5) the employer is liable." Long v. Ford Motor Co., 193 F. App'x 497, 501 (6th Cir. 2006) (citing Hafford v. Seidner, 183 F.3d 506, 512

---

[8] In Plaintiff's case, his is a member of the majority race.

(6th Cir. 1999)). A workplace is deemed a hostile work environment "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). This is both a subjective and objective standard; "[t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir. 1997) (citing Harris, 510 U.S. at 21–22).

The court must consider the "totality of the circumstances in determining whether the harassment was sufficiently severe or pervasive." Long, 193 F. App'x at 500 (citing Black, 104 F.3d at 826). In making this determination, courts consider "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." Harris, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted). "The effect on the employee's psychological well-being is . . . relevant to determining whether the plaintiff actually found the environment abusive." Harris, 510 U.S. at 23. "'[S]evere or pervasive' is properly considered in the disjunctive." Barrett v. Whirlpool Corp., 556 F.3d 502, 514 (6th Cir. 2009); see also Hawkins v. Anheuser–Busch, Inc., 517 F.3d 321, 333 (6th Cir. 2008).

The required proof under the fifth prong of the prima facie case differs if the harassment was carried out by Plaintiff's coworkers or supervisors. Barrett, 556 F.3d at 516. In situations

involving coworker harassment, employer liability "stems directly from the employer's actions, or lack thereof, in response to the harassment: The plaintiff must show that the employer 'knew or should have known of the charged [racial] harassment and failed to implement prompt and appropriate corrective action.'" Id. (quoting Hafford, 183 F.3d at 513). In such situations, the employer may only be liable for the actions of plaintiff's coworkers "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." Hawkins v. Annheuser-Busch, Inc., 517 F.3d 321, 338 (6th Cir. 2008) (quoting Blankenship v. Parke Care Ctrs., Inc., 123 F.3d 868, 873 (6th Cir. 1997)).

As to prongs one through four, Plaintiff has provided sufficient evidence to support a reasonable inference that Plaintiff was subjected to a hostile work environment. Plaintiff was a member of the majority, and he was subjected to unwelcome harassment in the form of the "cracker" note left on his desk and perhaps the two incidents involving vehicles driven by African American men. See supra Sec. I. Defendant FedEx Services is correct that an at best tenuous connection exists between the alleged off-campus stalking of Plaintiff and coworker conduct; however, the racially-derogatory note left at his cubicle may qualify as "severe" conduct giving rise to a reasonable inference of racial harassment. See Harris, 510 U.S. at 23. Generally, the single use of offensive racial slurs, while repugnant and unacceptable, does not qualify as "severe" conduct for purposes of § 1981 racial harassment claims. See Walker v. Bluff City Buick Co., No. 98–2009–M1/A, 1998 WL 957333, at *9 (W.D. Tenn. Dec. 13, 1998). When considering this statement both in the context of the October 4 and October 6, 2016 incidents involving Plaintiff and in light of the effect of these statements on Plaintiff's psychological well-being, the Court finds that these statements could lead to the reasonable

inference that Plaintiff was subjected to severe or pervasive conduct in the workplace.  See Black, 104 F.3d at 826.

Plaintiff, however, cannot prove that FedEx Services demonstrated a "manifest indifference or unreasonableness" in its response to Plaintiff's complaints of the alleged racial harassment.[9]  Plaintiff asserted in his deposition that after his "I stand while the national anthem is played" sign was defaced, he brought the incident to the attention of his supervisor Andy Pittman, who directed Plaintiff to file a complaint with FedEx Services HR.  (Reed Dep., ECF No. 83-3 at PageID 871.)  Reed also testified that after he found the racially-derogatory note left at his cubicle, he had a meeting in Sandra Cobb's office with FedEx Services security, Vice President Anne Sparrenberger, Cobb, and Pittman to discuss and respond to the incident.  (Id. at PageID 872.)  FedEx Services further investigated Plaintiff's complaints in connection with the October 4 and October 6, 2016 events and received a report via FedEx Services' internal security system.  (Pagano Dep., ECF No. 88-6 at PageID 1672–73.)  Louis Pagano, a FedEx Services security specialist, and other FedEx Services security officers investigated the incidents and interviewed Plaintiff on numerous occasions.  (Id. at PageID 1093, 97.)  Additionally, FedEx issued a "be on the lookout" notice for the red cars following Reed's filing of his workplace violence reports with FedEx Services' HR, and additionally instructed Plaintiff on how best to avoid similar scenarios in the future.  (Id. at PageID 1098–1099; Reed Dep. ECF No. 83-3 at PageID 872.)

Although FedEx Services was unable to determine who exactly was the source of the racially-derogatory note, FedEx acted in a manner that was "reasonably calculated to end the harassment."  Mullins v. Goodyear Tire & Rubber Co., 291 F. App'x 744, 749 (6th Cir. 2008)

---

[9] Plaintiff has not alleged, nor does the record suggest, that any of the threatening notes or statements were written by his supervisors.  Moreover, Reed's deposition testimony indicates that Pittman's alleged harassment was not racially motivated.  (Reed Dep. ECF No. 83-3 at PageID 865.)

(quoting <u>Jackson v. Quanex Corp</u>, 191 F.3d 647, 663–64 (6th Cir. 1999)) (finding that an employer's two-week investigation and instructions to the plaintiff to avoid certain areas was "reasonable," making the district court's grant of summary judgment in the defendant's favor appropriate). FedEx Services also acted appropriately especially given that Plaintiff at certain points did not cooperate with Pagano's investigation into the incident. <u>See</u> <u>Wierengo v. Akal Sec. Inc.</u>, 580 F. App'x 364, 372 (6th Cir. 2014) (finding that defendant's attempt to respond to letter complaint that did not name an alleged harasser or describe the alleged harassment was reasonable and did not demonstrate manifest indifference to the complaint when defendant attempted to interview the plaintiff yet plaintiff refused to respond). (<u>See</u> Pagano Dep., ECF No. 83-7, Exh. 3, PageID 1093.)

Because Plaintiff cannot demonstrate that FedEx Services' actions demonstrate a manifest indifference to his alleged racial harassment, Plaintiff has failed to prove a prima facie case of racial harassment under § 1981 against FedEx Services.

### C. Retaliation for Reporting Certain Alleged Racially Inspired Incidents Under 42 U.S.C. § 1981

Section 1981 encompasses retaliation claims. <u>CBOCS West, Inc. v. Humphries</u>, 553 U.S. 442, 446 (2008). Courts apply the same framework for a prima facie case of retaliation used in Title VII cases to § 1981 retaliation cases. <u>See</u> <u>Wade v. Knoxville Utils. Bd.</u>, 259 F.3d 452, 464 (6th Cir. 2001). In order to establish a prima facie retaliation case under § 1981, the plaintiff must demonstrate that: (1) he was engaged in protected activity or conduct; (2) that defendant knew of plaintiff's protected activity; (3) that the defendant undertook an adverse employment action against the plaintiff; (4) and that a causal connection exists between the plaintiff's protected activity and the adverse employment action. <u>Virts v. Consol. Freightways Corp.</u>, 285

F.3d 508, 521 (6th Cir. 2002). The causal connection between the protected activity and the adverse employment action may be demonstrated in two ways: (1) through direct evidence; or (2) "through knowledge coupled with a closeness in time that creates an inference of causation . . . ." Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000) (quoting Parnell v. West, No. 95-2131, 1997 WL 271751, at *2 (6th Cir. 1997)).

If plaintiff meets his burden of demonstrating a prima facie case of retaliation, the burden of production shifts to the defendant to provide a legitimate, non-discriminatory reason for its actions. Id. at 562. Once the defendant meets its burden of producing a legitimate, nondiscriminatory reason, the burden of production shifts back to the Plaintiff to demonstrate pretext. Id. The plaintiff may do so by demonstrating: "1) the stated reason had no basis in fact; 2) the stated reason was not the actual reason; and 3) that the stated reason was insufficient to explain Defendant's action." Logan v. Denny's, Inc., 259 F.3d 558, 567 (6th Cir. 2001). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr., 509 U.S. at 515 (1993) (emphasis in original). "To survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." Griffin v. Finkbeiner, 698 F.3d 584, 593 (6th Cir. 2012) (quoting Blair v. Henry Filters, Inc., 505 F.3d 517, 532 (6th Cir. 2007)).

FedEx Services does not dispute that Plaintiff was engaged in protected activity by filing his workplace violence complaints related to the 2016 incidents and his ADA accommodation request. (See ECF No. 83-1 at PageID 843.) Nor does Defendant contest that Defendant knew about these complaints. (See id.) However, Defendant argues (1) that Plaintiff cannot

demonstrate that his poor performance review qualifies as an adverse employment action, and (2) that Plaintiff cannot show causation.  (ECF No. 83-2.)

The denial of Plaintiff's bonus as a result of his poor performance review qualifies as an adverse employment action.  An adverse employment action is a decision by an employer that results in a "materially adverse change in the terms and conditions of [a plaintiff's] employment."  White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 795 (6th Cir. 2004) (en banc).  In order for a negative performance evaluation to qualify as an adverse employment action, "the plaintiff must point to a tangible employment action that [he] alleges [he suffered], or is in jeopardy of suffering, because of the downgraded evaluation."  White v. Baxter Healthcare Corp., 553 F.3d 381, 402 (6th Cir. 2008) (quoting Tuttle v. Metro Gov't of Nashville, 474 F.3d 307, 322 (6th Cir. 2007)).  For example, the denial of a two-year contract as a result of a poor performance evaluation qualified as an adverse employment action.  Redlin v. Gross Pointe Public School Sys., 921 F.3d 599, 608 (6th Cir. 2019).  The Sixth Circuit has also found that receiving a lower pay-scale as a result of a poor performance evaluation qualifies as an adverse employment action.  See White v. Baxter Healthcare Corp., 533 F.3d 381, 403 (6th Cir. 2008).  Plaintiff's denial of a bonus as a result of this poor performance evaluation, just as in these examples, qualifies as a "materially adverse change in the terms and conditions of" his employment.  See White, 364 F.3d at 795.  The poor performance review led to a tangible employment action that affected Plaintiff's pay for Fiscal Year 2016.  Therefore, Plaintiff has met prong three of his prima facie case as to both his suspension without pay and his negative performance evaluation for Fiscal Year 2017.

However, Plaintiff has failed to demonstrate that his protected activity, namely the filing of his workplace violence complaints in 2016, caused either his suspension without pay or his

later poor performance review. Plaintiff admitted that FedEx management has never taken racially motivated action against him, nor has FedEx Services' HR engaged in racially discriminatory actions. (Reed Dep. ECF No. 83-3 at PageID 866–67.) Additionally, Plaintiff admitted that he believed his poor performance evaluation was motivated by his filing of his ADA request for a new supervisor and for filing a complaint against Andy Pittman in the Spring of 2017. (Id. at PageID 865.) Neither of these events related to complaints of racial discrimination.

Neither the actions of Andy Pittman and FedEx Services in response to Plaintiff's filing of his workplace violence complaints in the Fall of 2016, nor the other evidence proffered by Plaintiff as proof of FedEx's Services retaliatory animus, support the inference that Defendant suspended Reed without pay in retaliation for Plaintiff's protected activity. Plaintiff's deposition testimony and documentation from FedEx Services indicates that FedEx Services responded in an appropriate manner to Reed's workplace violence complaints following the allegedly racially-motivated incidents that occurred in the Fall of 2016. (See Reed SOF, ECF No. 88-2 at PageID 1207–09.) Moreover, Plaintiff has also not produced evidence demonstrating a causal connection between this complaint and his suspension without pay, beyond his own beliefs and speculation as to FedEx Services' reasons for its investigation into the false police report and his suspension without pay. Chappel v. GTE Products Corp., 803 F.2d 261, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of . . . discrimination."). (See ECF No. 88-3 at PageID 865, 867.)

Additionally, the temporal proximity between his workplace violence complaint and his suspension does not by itself give rise to an inference of retaliatory motive. See Cooper v. City of North Olmstead, 795 F.2d 1265, 1272 (6th Cir. 1986) (finding that "[t]he mere fact that

Cooper was discharged four months after filing a discrimination claim is insufficient to support an [inference] of retaliation," in the absence of any other evidence directly linking the adverse employment actions to protected activity); see also Nguyen, 229 F.3d at 566–67 (reaffirming the holding in Cooper and stressing that without more, temporal proximity alone is not sufficient to prove a prima facie case of retaliation); see also Parnell, 1997 WL 27151, at *2 (finding that "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence").

In cases where courts have found temporal proximity to be insufficient to support an inference of retaliation, "the fact of temporal proximity alone was not compelling, because the plaintiff's retaliation case was otherwise weak, and there was substantial evidence supporting the defendant's version of the events." Nguyen, 229 F.3d at 567. Reed's case is no different. Plaintiff's case relies primarily on temporal proximity and his own belief as to Defendant's motivations for its decisions. FedEx Services responded to and investigated Reed's complaints of racial harassment. See supra at Sec. IV.B. Reed cannot dispute that he was charged with filing a false police report, and that these charges were supported by substantial evidence. See supra at 17–18. Nor can Reed dispute that FedEx Services had a particularly compelling justification for suspending him without pay, given that substantial evidence supported FedEx Services' "version of the events." Nguyen, 229 F.3d at 567. Therefore, Plaintiff cannot demonstrate a prima facie case of retaliation in connection with his suspension without pay.

Even if Plaintiff could meet his burden to demonstrate a prima facie case of retaliation in connection with his 2016-2017 suspension without pay, Plaintiff cannot prove that Defendant's proffered legitimate, non-discriminatory reason for the suspension was a pretext for retaliatory discrimination. Just like his claim for racial discrimination under § 1981, Plaintiff has not

provided similarly situated comparators who were arrested or charged with a crime and who were *not* suspended without pay or terminated. Nor has Plaintiff provided direct or circumstantial evidence beyond his own opinions and beliefs that the real reason for Plaintiff's suspension without pay was the filing of his 2016 workplace violence complaints. See supra at 25.

His retaliation claims regarding his poor performance evaluation for Fiscal Year 2017 fare no better. The only evidence supporting the conclusion that Plaintiff's poor performance review was the result of his workplace violence complaints is Reed's own belief that Andy Pittman was motivated by his various complaints.[10] (Reed Dep., ECF No. 83-3 at PageID 865.) As stated above, Plaintiff's speculation and belief regarding Pittman's motivations are not enough to support a claim for unlawful retaliation in connection with his reporting of certain alleged racially inspired incidents to FedEx Services. See Chappel, 803 F.2d at 268. Therefore, Plaintiff's retaliation claims related to his 2017 Fiscal Year performance reviews also fail.

### D. ADA Retaliation

Courts analyze ADA retaliation claims under the McDonnell-Douglas burden-shifting framework. Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014). In order to demonstrate a prima facie case of retaliation under the ADA, the plaintiff must demonstrate: (1) that the plaintiff engaged in an ADA-protected activity; (2) that the employer knew of this protected activity; (3) that the employer took an adverse employment action against Plaintiff; and (4) that a causal connection exists between the ADA-protected activity and the adverse employment action taken by the defendant. See A.C. v. Shelby Cty. Bd. of Educ., 711 F.3d 687,

---

[10] Plaintiff may also have been referring to the Spring 2017 complaint filed specifically against Pittman for harassment. The Court will construe his claim as Plaintiff asserting that Pittman was motivated by the Fall 2016 and Spring 2017 complaints filed by Reed.

697 (6th Cir. 2013). "Establishing a prima facie case is a low hurdle." <u>Rorrer</u>, 743 F.3d at 1046

(quoting <u>Gribcheck v. Runyon</u>, 245 F.3d 547, 551 (6th Cir. 2001)).

If the plaintiff successfully meets its initial burden of demonstrating a prima facie case of

ADA retaliation, the burden of proof shifts to the defendant to provide a legitimate, non-

discriminatory reason for the adverse employment action. <u>A.C. ex rel. J.C. v. Shelby Cty. Bd. of</u>

<u>Educ.</u>, 711 F.3d 687, 697 (6th Cir. 2013). If the defendant can proffer a legitimate,

nondiscriminatory reason for its actions, then the burden shifts back to Plaintiff to demonstrate

by a preponderance of the evidence that defendant's asserted legitimate, nondiscriminatory

reasons were a pretext for retaliation in violation of the ADA. <u>Id.</u>

Plaintiff engaged in one incidence of ADA-protected activity—the filing of his ADA

accommodation request with FedEx Services in February 2017. <u>See</u> <u>A.C. ex rel. J.C.</u>, 711 F.3d

at 698. <u>See</u> Sec. I. Defendant therefore knew that Plaintiff was engaging in protected activities

with respect to his ADA-accommodation request, meeting both prongs one and two of Plaintiff's

prima facie case. As discussed <u>supra</u>, the poor performance review qualifies as an adverse

employment action.

Plaintiff provides some evidence supporting his assertion that his poor performance

review related to his ADA accommodation request. Specifically, Plaintiff has provided evidence

that Pittman was the subject of the accommodation sought by Reed, and that throughout the

period leading up to the performance review Plaintiff's work was closely scrutinized by Pittman.

<u>See</u> <u>supra</u> Sec. I. Although Defendant FedEx argues that this is not enough to demonstrate a

causal connection, the Court reiterates that "[t]he burden of establishing a *prima facie* case in a

retaliation action is not onerous, but one easily met." <u>Nguyen</u>, 229 F.3d at 563.

However, Plaintiff's claim fails on the issue of pretext. Defendant FedEx Services offered a legitimate, non-discriminatory reason for giving Plaintiff a poor performance review: Plaintiff was not meeting his work objectives and his supervisors felt that his job performance was unsatisfactory. (See 2017 Fiscal Year Performance Review, ECF No. 83-2 at PageID 1049–57.) Both Andy Pittman's notes detailing Plaintiff's work performance following his return from his 2016-2017 suspension and the performance review itself provide evidence supporting FedEx Services' legitimate, nondiscriminatory reason for Plaintiff's poor performance review. (See ECF No. 88-7 at PageID 2114–22; see also ECF No. 83-4 at PageID 1049–57.) Moreover, Plaintiff received similar performance review scores in the two preceding Fiscal Years. These earlier performance reviews support Defendant's asserted legitimate, non-discriminatory reason. (See ECF No. 83-4 at PageID 1035, 1048)

In addition to Plaintiff's own belief that his performance was satisfactory and that Andy Pittman retaliated against Plaintiff for filing his ADA accommodation request, Plaintiff points to a line contained in Pittman's January 27, 2017 entry in his logbook detailing Reed's work activities as evidence of retaliatory intent. (ECF No. 88-1 at PageID 1191–92.) In that entry, Pittman states:

> Dave came by and has decided to keep his FMLA claim open so that "my job will be protected due to illness." I tried to explain to Dave that he must still meet his performance objective to improve his performance rating. He can't use the excuse of missing time in the office as a reason for NOT meeting his performance objectives. He agreed[!]

(ECF No. 88-7 at Page 2121 (emphasis in original); see also ECF No. 88-1 at PageID 1192.) Plaintiff also points to portions of the deposition testimony of Randy Irving, who stated that the FMLA-covered time should not have been held against an employee in his performance reviews, nor should the short-term disability be held against an employee in his performance reviews.

(ECF No. 88-6 at PageID 1922.)   However, Pittman's Fiscal Year 2017 review of Plaintiff's work provides no indication that Plaintiff's protected leave affected his score, nor has Plaintiff provided evidence demonstrating that this report unlawfully considered Plaintiff's time-off as part of his FMLA or disability leave.  (See Affidavit of Pearlie Thomas, Exhibit V, Performance Review of David Reed (6/1/2016-6/13/2017) ECF No. 83-4 at PageID 1049–1057.)

Moreover, the ADA "protects individuals only from retaliation for engaging in, or aiding another who engaged in, activity covered by the ADA."  Rorrer, 743 F.3d at 1046.  Plaintiff's reference to the comments made by Pittman regarding his FMLA-leave and short-term disability leave do not implicate the ADA.  Id. (citing Reynolds v. American National Red Cross, 701 F.3d 143 (4th Cir. 2012), in which the Fourth Circuit held that "a plaintiff's claim that his employer retaliated against him for filing a workers' compensation claim failed because 'a workers' compensation claim is not something . . . covered by the ADA'").

Thus, Plaintiff has failed to demonstrate that Defendant FedEx Services unlawfully discriminated against Plaintiff in retaliation for filing an ADA-protected accommodation request.

### E.  ADA Failure to Accommodate

In order to prove a prima facie claim for failure to provide an accommodation under the ADA, the plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) that he is otherwise qualified for the position; (3) his employer knew of or had reason to know about his disability; (4) that the employee requested an accommodation; and (5) the employer failed to provide the necessary accommodation.  Johnson v. Cleveland City School Dist., 443 F. App'x 974, 982–83 (6th Cir. 2011) (citing DiCarlo v. Potter, 358 F.3d 408, 419 (6th Cir. 2004) (reversed on other grounds)).  "The employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and

request such reasonable accommodations." Johnson v. Cleveland City Sch. Dist., 443 F. App'x 974, 983 (6th Cir. 2011).

The ADA defines disability to include, among others, "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); Tinsely v. Caterpillar Financial Servs. Corp., 766 F. App'x 337, 341 (6th Cir. 2019). "Major life activities" include "major bodily functions" such as the "functions of the . . . neurological, brain, respiratory, [or] circulatory" systems. 42 U.S.C. § 12102(2)(B). In determining whether an individual is substantially limited in performing a major life activity, courts consider three factors: (1) "the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact of the impairment." Cardenas-Meade v. Pfizer, Inc., 510 F. App'x 367, 370 (6th Cir. 2013) (quoting Novak v. MetroHealth Med. Ctr., 503 F.3d 572, 581 (6th Cir. 2007)).

Defendant argues that Plaintiff cannot demonstrate (1) that he is disabled within the meaning of the ADA, and (2) that FedEx failed to provide him a reasonable accommodation. Defendant does not dispute that Plaintiff is "otherwise qualified" for his current position with FedEx, with or without the accommodation. Construing all inferences in favor of Plaintiff, Reed has demonstrated a genuine dispute of material fact as to whether his stroke, and the exacerbation of the symptoms of his stroke, qualify him as disabled. (See ECF No. 88-1 at PageID 1193–94.)

Reed has demonstrated through letters from his treating physicians that the effects of his stroke and recent cardiac procedures could be worsened by exposure to heightened levels of workplace stress. (See ECF No. 88-7 at PageID 2317–18.) Courts have found that harmful effects of stress on an individual's health following a stroke may qualify as a disability under the

ADA, specifically when stress effects the individual's neurological or cardiovascular functions. See Russ v. Memphis Light, Gas, and Water Div., No. 14-2365, 2016 WL 8311551, at *7 (W.D. Tenn. Apr. 21, 2016). The effects of a stroke on neurological or cardiovascular functions can qualify a person as "disabled." See, e.g., Russ, 2016 WL 8311551, at *7 (finding that a genuine dispute of material fact existed as to whether the plaintiff who recently suffered a stroke was disabled because "stress exacerbates the effects of her conditions").

However, Plaintiff has not met his burden of proposing a reasonable accommodation. See Johnson v. Cleveland City Sch. Dist., 443 F. App'x 974, 983 (6th Cir. 2011) (noting that the employee at all times "bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations"). Generally, "while a reasonable accommodation under the ADA does include 'reassignment to a vacant position,' requests for reassignment to a new supervisor are disfavored." Cardenas-Meade, 510 F. App'x at 372. Although it is "appropriate to consider the reasonableness of such a request on a 'case-by-case' basis," there operates a "presumption . . . that a request to change supervisors is unreasonable, and the burden of overcoming that presumption (i.e., of demonstrating that, within the particular context of plaintiff's workplace, the request was reasonable) therefore lies with the plaintiff." Id. (quoting Kennedy v. Dresser Rand Co., 193 F.3d 120, 122–23 (2d Cir. 1999)). This inquiry weighs the "benefits of such a transfer" with the "associated administrative costs." Id. (citing Gaul v. Lucent Techs. Inc., 134 F.3d 576, 581 (3d Cir. 1998)).

Enforcement Guidelines issued by the Equal Employment Opportunity Commission ("EEOC") support this conclusion. The EEOC's Enforcement Guidance states that an "employer does not have to provide an employee with a new supervisor as a reasonable accommodation."

EEOC Enforcement Guideance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (Enforcement Guidance), EEOC Notice No. 915.002 (October 17, 2002). Although the EEOC's Enforcement Guidance definitions are not binding on courts, the Court may "defer to these informal administrative interpretations to the extent of [their] persuasive power." Bates v. Dura Automotive Sys., Inc., 767 F.3d 556, 574 (6th Cir. 2014) (quoting E.E.O.C. v. SunDance Rehab. Corp., 446 F.3d 490, 500 (6th Cir. 2006)). The Sixth Circuit "recognize[s] their very persuasive authority." Id. (quoting Kroll v. White Lake Ambulance Auth, 691 F.3d 809, 816 (6th Cir. 2012)).

Plaintiff has not met his burden to demonstrate that transfer from his current position under Pittman to a new supervisor overcomes the presumption that an employee's requested transfer to a new supervisor is unreasonable. Although Plaintiff's doctors did state that Reed needed to avoid work stress in the wake of his stroke, (see Reed SOF, ECF No. 88-2 at PageID 1219), Plaintiff's primary issue with Pittman was his management style. (See Reed Dep., ECF No. 83-3 at PageID 863.) This reason alone does not justify imposing a significant burden on Defendant to transfer Plaintiff from his current position to one under a new supervisor, regardless of whether it would reduce Reed's work-related stress. See Burdett-Foster v. Blue Cross Blue Shield of Michigan, 574 F. App'x 672, 680 (6th Cir. 2014) (affirming the district court's grant of summary judgment in favor of defendant on failure-to-accommodate claim involving the plaintiff's employer's denial of her request to report to a new supervisor after the plaintiff asserted that doing so would "avoid general harassment" and prevent exacerbation of her depression, hypertension, and migraines); see also Coulson v. The Goodyear Tire & Rubber Co., 31 F. App'x 851, 858 (6th Cir. 2002) ("Although transfer can be a reasonable accommodation," in the plaintiff's case it was not because he was "seeking to force [his

employer] to transfer him so that he will not be required to work with certain people . . . . Courts are not meant to act as a super-bureau of Human Resources."); see also Deister v. AAA Auto Club of Michigan, 91 F. Supp. 3d 905, 928 n.7 (E.D. Mich. 2015) (finding that a reasonable accommodation cannot include a request for a change of supervisor under Sixth Circuit precedent); Langley v. DaimlerChrysler Corp., 407 F. Supp. 2d 897, 911 (N.D. Ohio 2005) ("A transfer requested so that the plaintiff will not be required to work with certain people is not a reasonable accommodation.")

Moreover, Defendant has provided substantial evidence demonstrating that the transfer would impose an undue burden on Defendant FedEx Services because no vacant position under a new manager was available at the time that Plaintiff requested his transfer. (See Second Declaration of Sandra Cobb, ECF No. 91-1 at PageID 2428.) "Although a reasonable accommodation may include reassignment to a vacant position, an employer need not reassign a disabled employee to a position for which he is not qualified, nor is the employer required to . . . displace other employees' rights in order to accommodate a disabled employee." Hedrick v. West. Reserve Care Sys., 355 F.3d 444, 457 (6th Cir. 2004) (internal quotation marks and citations omitted). "On the contrary," ADA regulations provide that "an employer need only reassign a disabled employee to a vacant position. Employers are not required to create new jobs, [or] displace existing employees from their positions . . . ." Id. (quoting Burns v. Coca–Cola Enter., Inc., 222 F.3d 247, 257 (6th Cir. 2004)). Moreover, an employer is only required to "transfer an employee to a position comparable to the employee's prior position." Id. (citing Hoskins v. Oakland Cty. Sheriff's Dep't, 227 F.3d 719, 728 n.3 (6th Cir. 2000)). Sandra Cobb, FedEx Services' IT Director, stated in her declaration that from July 1, 2016 until October 31, 2017, there were "no open non-management professional positions in my organization including

Technical Quality Specialists." (Second Declaration of Sandra Cobb, ECF No. 91-1 at PageID 2428.) That is, at the time Plaintiff requested his accommodation, no positions equivalent to the position held by Plaintiff were available. See supra Undisputed Facts, Sec. I. (Id.)

Plaintiff has provided no evidence to the contrary. Although Plaintiff contends that he was told by other employees, Fatima Qudri and Tom Kelly, that they had been transferred to vacant positions upon their request, (see Reed Dep., ECF No. 88-3 at PageID 1265–69), both Qudri and Kelly's affidavits as provided by FedEx Services clearly state that they have never requested a transfer to a new manager. (See ECF No. 83-10 at PageID 1114–15; ECF No. 83-11 at PageID 1116–17.)

Plaintiff, therefore, has failed to demonstrate a prima facie failure-to-accommodate case under the ADA. Plaintiff's request for transfer to another supervisor was unreasonable, and because Plaintiff cannot demonstrate that, in this instance, benefits of such a transfer outweigh the administrative costs imposed on FedEx Services by the transfer, the general presumption operates.

### F.  ADA Failure to Engage in the Interactive Accommodation Process

ADA regulations require that in order to determine "the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3). The purpose of the interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Id. The Sixth Circuit has made the process mandatory, and "both parties have a duty to participate in good faith." Kleiber v. Honda of Am. Mfg., 485 F.3d 862, 871 (6th Cir. 2007). The interactive process ensures that the employer does not rely on "stereotypes and generalizations about a

disability," but rather bases its decision "on the actual disability and the effect that disability has on the particular individual's ability to perform the job." Rorrer v. City of Stow, 743 F.3d 1025, 1040 (6th Cir. 2014) (citation omitted). If the process does not result in an accommodation, "responsibility will lie with the party that caused the breakdown." Id. However, while the process is mandatory, a party's failure to engage in this process only independently violates the ADA if "the plaintiff establishes a *prima facie* showing that he proposed a reasonable accommodation." Id. at 1041.

The Sixth Circuit has provided some examples from other circuits of situations where employers have demonstrated a lack of good faith in their participation in the interactive process. Bad faith may be shown in situations where the employer fails to discuss a reasonable accommodation in the same meeting in which the "employer takes an adverse employment action against an injured employee." Rorrer, 743 F.3d at 1040 (citing EEOC v. Chevron Phillips Chem. Co., 570 F.3d 606, 622 (5th Cir. 2009)). Additionally, "failing to assist an employee in seeking an accommodation may suggest bad faith." Id. (citing Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc., 439 F.3d 894, 902 (8th Cir. 2006)). However, "an employer is not required to propose a counter-accommodation in order to participate in the interactive process." Zaffarino v. Metro. Gov't of Nashville and Davidson Cty., 2016 WL 5724187, at *8 (M.D. Tenn. Sept. 30, 2016) (quoting Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 203 (6th Cir. 2010)). An employer's proposal of a counter-modification only demonstrates added good faith. Id.

Plaintiff has not demonstrated that FedEx Services failed to participate in good faith in the interactive process. The record is undisputed that Defendant received and requested information from Plaintiff's treating physicians regarding his work limitations, that Brianna Milner opened the accommodation request and received and reviewed Plaintiff's information

from his treating physicians, and that FedEx Services' review committee reviewed the request and made a final determination based on Plaintiff's submitted materials. (See Dec. Brianna Milner, ECF No. 83-9 at PageID 1109–10.) Plaintiff disputes the precise way in which FedEx Services reviewed and received the information, and how the information was transmitted to the review committee's members. (See Reed SOF, ECF No. 88-3 at PageID 1217–25.) Although Plaintiff disputes the exact wording of conversations he had with individuals who were involved in FedEx Services' review of his accommodation request or exactly who made the decision, ample evidence supports the conclusion that Defendant reached out to Plaintiff for more information regarding his relationship with Pittman and assessed whether his accommodation was warranted given both Plaintiff's medical history and his ability to perform the job. (See, e.g., ECF No. 88-7 at PageID 2158, 2221–27, 2242–45, 2279, 2289–91, 2304–05, 2318–20; see also Brianna Milner Dec., ECF No. 83-9 at PageID 1109–13; Pearlie Thomas Dec. ECF No. 83-4 at PageID 913, 1058–62.)

Although this case may not represent the "model interactive process," the situation in the instant case does not compare to those cases where courts have found the defendant employer to have failed to act in good faith when participating in the interactive process. See Kleiber, 485 F.3d at 871–72 (finding that despite lack of direct communication between the parties, the defendant still investigated and engaged in good-faith process); see also Rorrer, 743 F.3d at 1040 (providing examples of absence of good faith). The record also does not support Plaintiff's assertion that Defendant summarily concluded that Plaintiff was not entitled to an accommodation without reviewing his submitted documentation. FedEx Services considered and weighed the various submitted materials and made an informed decision after several

months of review.  See, e.g., Rorrer, 743 F.3d at 1041.  (See Brianna Milner Dec., ECF No. 83-9 at PageID 1109–10.)

Even if, however, a genuine dispute of material fact exists to support Plaintiff's contention that the blame for the breakdown in the process falls on FedEx Services, Plaintiff's claim still fails because Plaintiff's proposed accommodation of a transfer to a new supervisor was not reasonable.  An employee's failure to provide a reasonable accommodation bars a Plaintiff's claim that the Defendant failed to engage in the required interactive process.  See Rorrer, 743 F.3d at 1041 ("[F]ailure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation."); see also Gati v. West Kentucky Univ., 762 F. App'x 246, 252 (6th Cir. 2019) (finding that a student's failure to provide the school with a reasonable accommodation barred claim against the school for failure to engage in the interactive process); Vaughn v. Parkwest Med. Ctr., 716 F. App'x 428, 434 (6th Cir. 2017) ("The failure to engage in the interactive process is only actionable if a qualified employee establishes a prima facie showing that she proposed a reasonable accommodation.").  Plaintiff's claim that Defendant FedEx Services failed to engage in good faith in the interactive process therefore fails.  See Rorrer, 743 F.3d at 1041.

In summary, Plaintiff has failed to present a genuine dispute of material fact as to whether Defendant FedEx Services failed to engage in the ADA's mandatory interactive process.

## G.  ADA Discrimination

To establish a prima facie case of disability discrimination, the plaintiff must demonstrate that: (1) he is disabled; (2) he is otherwise qualified for the position; (3) he suffered an adverse employment action; (4) "the employer knew or had reason to know of the plaintiff's disability";

and (5) that he was treated differently from other similarly situated non-disabled individuals.[11]

Tennial v. United Parcel Serv., Inc., 840 F.3d 292, 306 (6th Cir. 2016). The plaintiff's disability "must be a 'but for' cause of the adverse employment action." Id. (citing Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 318 (6th Cir. 2012) (en banc)). Courts are not to apply Title VII's "motivating factor" standard of causation to ADA discrimination cases. See Lewis, 681 F.3d at 320; see also Rosebrough v. Buckeye Valley High Sch., 582 F. App'x 647, 651 (6th Cir. 2014). "A plaintiff's burden in establishing a prima facie case is not onerous and is easily met." Wallace v. Edward W. Sparrow Hospital Ass., 782 F. App'x 395, 404 (6th Cir. 2019) (citing Hollins v. Atlantic Co., 188 F.3d 652, 659 (6th Cir. 1999)).

If the plaintiff establishes a prima facie case of disability discrimination, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for taking the adverse employment action against the plaintiff. Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir. 2008). If the defendant meets its burden by providing a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the defendant's proffered reason was a pretext for disability discrimination. Id. To demonstrate pretext, the plaintiff must show by the preponderance of the evidence that either: (1) "the proffered reason had no basis in fact"; (2) "the proffered reason did not actually motivate [the adverse employment action]"; or (3) "the proffered reasons were insufficient to motivate the [adverse employment action]." Wallace, 782 F. App'x at 404 (citing Coomer v. Bethesda Hospital, Inc., 370 F.3d 499, 511 (6th Cir. 2004)). "If the employer had an

---

[11] Plaintiff's case does not implicate hiring or firing, but only implicates an adverse employment action that affected his discretionary bonus pay. Therefore, the fifth prong, that "the position remained open while the employer sought other applicants or the disabled individual was replaced," is inapplicable to Plaintiff's case. See Tennial, 840 F.3d at 306. Because the Sixth Circuit applies the McDonnell-Douglas framework to disability discrimination claims, the Court replaces the fifth prong with the fourth prong, i.e. the equivalent prong, used in a typical McDonnell-Douglas/Burdine analysis. See Arrendale v. City of Memphis, 519 F.3d 587, 603 (6th Cir. 2008).

honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." Upshaw v. Ford Motor Co., 576 F.3d 576, 586 (6th Cir. 2009).

Construing all inferences in favor of Plaintiff, Reed has not established a prima facie case of disability discrimination. Although Plaintiff can demonstrate that he was disabled following his stroke, that he was otherwise qualified for the position (which Defendant does not dispute), that he suffered an adverse employment decision (his reduced bonus as a result of his poor performance evaluation for the Fiscal Year 2017), and that FedEx Services knew of Plaintiff's disability, he cannot demonstrate that he was treated dissimilarly from similarly-situated non-disabled FedEx Services' employees. Plaintiff has failed to identify FedEx Services employees who were not disabled, whose job performance was comparable to Plaintiff, and who were treated differently from Plaintiff.

Moreover, even if Plaintiff arguably did meet his burden of presenting a prima facie case of disability discrimination, he cannot demonstrate that the legitimate, nondiscriminatory reasons for his poor performance evaluation, namely that he failed to meet his work expectations and that his job performance was unsatisfactory, were a pretext for disability discrimination. The evidence offered by Plaintiff does not demonstrate that Defendant's reason had "no basis in fact," that this reason did not actually motivate Andy Pittman at the time he reviewed Plaintiff's work for the Fiscal Year 2017, or that Defendant's proffered reasons were insufficient to justify Plaintiff's poor performance score. See Wallace, 782 F. App'x at 404. As stated supra, Pittman's comments with respect to Plaintiff's performance dating back to late January and early February 2017 do not relate to his disability or his ADA claim. It is undisputed that Plaintiff

suffered a stroke in February 2017. See supra Sec. I. Such statements were therefore made only in connection with his pre-suspension and post-suspension work performance rather than in connection with his stroke—because it had not happened yet. The performance review itself also gives no indication that Plaintiff's leave-time and his disability accommodation request played a role in Pittman's decision to give Reed a poor performance score. (See ECF No. 83-4 at PageID 1049–1057.) Moreover, Plaintiff's performance review score for Fiscal Year 2017 was consistent with his performance reviews from Fiscal Years 2015 and 2016. (See ECF No. 83-4 at PageID 1035, 1048.) Although Plaintiff asserts that the criterion and categories used in Pittman's 2017 evaluation form differed from those of previous years' performance reviews (see Reed SOF, ECF No. 88-2 at PageID 1204–05), that difference does not rebut the fact that the scores were consistent both before and after Pittman became his supervisor.

Plaintiff's heightened-scrutiny allegations also do not support a finding that Defendant's reasons for the poor-performance review were pretextual. See Wallace, 782 F. App'x at 406. Although evidence of heightened scrutiny by supervisors may in some instances support a finding of pretext, discrimination laws do not protect a plaintiff "from heightened scrutiny prompted by prior misconduct on the job." Tingle v. Arbors at Hilliard, 692 F.3d 523, 531–32 (6th Cir. 2012). Plaintiff had just returned from his suspension for being charged with filing a false police report when Pittman began to monitor his activities, an event that occurred approximately a month before Plaintiff suffered a stroke. See supra Sec. I. The fact that Pittman closely scrutinized Reed's work following his return from his roughly 61-day suspension and throughout the rest of Fiscal Year 2017 does not support a finding that FedEx Services' reasons for his poor performance review were a pretext for disability discrimination. (Id.)

Plaintiff's own personal belief that Pittman gave him a poor performance-review score because of his ADA accommodation requests and his leave time following his stroke and his speculative inquiry into the reasons for Sandra Cobb and Brianna Milner's in-person meeting to discuss Reed's disability accommodation, do not reasonably demonstrate pretext. Nor do they demonstrate that Plaintiff's disability was a "but for cause" of his poor performance review. "Mere personal beliefs, conjecture and speculation are insufficient to support an inference of . . . discrimination." Chappel, 803 F.2d at 268. Additionally, nothing in the record supports the inference that Defendant's employees' discussions of Plaintiff's disability accommodation affected the determination of Plaintiff's performance review.

As stated supra, Plaintiff has provided no comparators for the Court to consider in determining whether Plaintiff's poor performance score for Fiscal Year 2017 was because of his disability, and not because of his poor on-the-job performance. Plaintiff has not identified similarly situated non-disabled individuals who were treated differently in Fiscal Year 2017 performance reviews. Although pretext can be demonstrated by other means, "evidence '[e]specially relevant to such a showing' is proof that an employer treated similarly situated" non-disabled employees in a manner different from the plaintiff. Tennial, 840 F.3d at 302. Even if Reed disagreed with Pittman's conclusions regarding his job performance for Fiscal Year 2017, Reed has not demonstrated that Pittman was not acting on his "honest belief in the proffered basis for the adverse employment action" or that Pittman did not "reasonably rel[y] on the particularize[d] facts" before him when evaluating Plaintiff's Fiscal Year 2017 job performance. Upshaw, 576 F.3d at 586.

Finally, Plaintiff cannot assert that FedEx regarded him as disabled. An individual may be "regarded as disabled" for purposes of the ADA's anti-discrimination provisions if "an

employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." Ross v. Campbell Soup Co., 237 F.3d 701, 706 (6th Cir. 2001). A necessary component of proving a regarded-as disability-discrimination claim is proof that the employer "entertains misconceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Sutton v. United Air Lines, 527 U.S. 471, 489 (1999). The record does not reflect that any of Plaintiff's supervisors or FedEx Services' management regarded him as limited in performing the essential functions of his job. In fact, Pittman's notes and 2017 performance review of Plaintiff, as detailed supra, point to the opposite conclusion: that they saw Pittman as fully competent and able to meet the requirements of his job. Therefore, Plaintiff's claim cannot be characterized as a "regarded as" disability claim.

In summary, Plaintiff has not created a genuine dispute of material fact as to whether Pittman's poor review of Plaintiff's 2017 Fiscal Year job performance was because of Plaintiff's stroke. Plaintiff has not demonstrated that there exists a genuine dispute of material fact as to whether Defendant's asserted reason for his poor work performance as assessed by his supervisors was a pretext for discrimination based on Plaintiff's disability. Plaintiff has not provided evidence supporting an inference that his stroke and its effects were a but for cause of his poor performance review.

### H. ADA Hostile Work Environment

In order to maintain an ADA hostile work environment claim, the plaintiff must show: (1) that he was disabled; (2) that he was "subject to unwelcome harassment"; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work

performance; and (5) the defendant knew or should have known about the harassment and failed to take corrective action.  Trepka v. Bd. of Educ., 28 F. App'x 455, 461 (6th Cir. 2002) (citing Blankenship v. Parke Care Ctrs., Inc., 123 F.3d 868, 872 (6th Cir. 1997)).  The plaintiff bears the burden of demonstrating that the alleged conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment." Trepka, 28 F. App'x at 461 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

Plaintiff arguably has met elements one, two, four, and five of the prima facie hostile work environment claim. However, Plaintiff has not, and cannot, demonstrate that Pittman's conduct, or the actions of other FedEx employees in the Spring and Summer of 2017, were so "severe or pervasive as to alter the conditions of" Plaintiff's employment.  Nor can Plaintiff demonstrate that any alleged harassment was because of his disability.  First, Plaintiff has provided no evidence that he was subjected to discriminatory harassment that was "motivated by a bias towards the employee's protected class."  Id. (citing Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)).  As stated supra, Plaintiff cannot demonstrate that Pittman's notes detailing Plaintiff's daily work activity following his return from his suspension, Pittman's performance review of Plaintiff's work from Fiscal Year 2017, the comments made by FedEx Services' management and HR in connection with his accommodation request, the fact that Plaintiff's work was closely scrutinized by Pittman since his January 2017 return from his suspension, or any other evidence cited to by Plaintiff as evidence of discrimination, were taken "because of" Plaintiff's disability.  See id. at 461–62; see also Bowman v. Shawnee State Univ., 220 F.3d 456, 463–64 (6th Cir. 2000) (finding that while the plaintiff recited, "a litany of perceived slights and abuses, many of the alleged harassing acts cannot be considered in the

hostile work environment analysis because [the plaintiff] has not shown that the . . . harassment had an anti-male bias").  Although Plaintiff asserts that Pittman treated him differently from other employees and that he believed this was because of either his accommodation request or workplace violence report, Plaintiff has not demonstrated beyond his own "bare and unsupported assertion" that Pittman's actions were in response to Plaintiff's stroke and the effects of his stroke.  See Bowman, 220 F.3d at 464.  (Reed Dep., ECF No. 83-3 at PageID 864.)  Plaintiff has also failed to present direct or circumstantial evidence that his disability factored into his poor performance evaluation for Fiscal Year 2017.  See Trepka, 28 F. App'x at 462.

Additionally, Plaintiff's case is similar to other cases in which the Sixth Circuit has found plaintiffs' asserted harassment to have failed to establish that the alleged discriminatory conduct was "severe or pervasive."  See, e.g., Trepka, 28 F. App'x at 461–62 (finding that various humiliating and demeaning actions, including comments made by the defendant such as "You can walk . . . We all see you walk . . .You walk these steps every day," to a woman who alleged that she had mobility problems did not constitute severe or pervasive conduct, and affirming district court's grant of summary judgment in defendant's favor on plaintiff's ADA hostile work environment claim); see also Bowman, 220 F.3d at 464 (finding that the plaintiff's allegations that he was treated differently than others because he alleged that he was rubbed on his shoulder in inappropriate ways on multiple occasions did not present a genuine dispute of material fact as to whether the plaintiff was subjected to a hostile work environment).  Although Plaintiff may have been subjected to "intimidation, ridicule, and mistreatment," "to avoid summary judgment," he is required to provide "at least some evidence of discrimination."  Bowman, 220 F.3d at 464; see also Trepka, 28 F. App'x at 462.  He has failed to do so.

## V.     CONCLUSION

For the foregoing reasons, Defendant FedEx Services' Motion for Summary Judgment is

**GRANTED**.

**SO ORDERED**, this 3rd day of March, 2020.

 /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE